[Cite as *State v. Taylor*, 2015-Ohio-403.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     27273 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DONTAY A. TAYLOR | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 13 03 0816 |

DECISION AND JOURNAL ENTRY

Dated: February 4, 2015

CARR, Judge.

{¶1}    Appellant, Dontay Taylor, appeals his convictions in the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    On July 23, 2012, Dontay Taylor rode with two acquaintances to the Embassy Lounge in Akron.  The lounge's employees denied Taylor admittance, but his companions, Rishawn Norwood and Anton Banks, were allowed to enter.  Taylor argued with the lounge manager for several minutes then walked toward their parked vehicle.  Norwood and Banks followed.  Although Norwood and Banks got into the vehicle, Taylor opened his door then turned and approached the lounge entrance again.  About that time, someone fired multiple gunshots toward the entrance.  Immediately after the shots were fired, Taylor ran back toward the vehicle and climbed in the backseat.  Norwood sped away from the scene.  When Banks

received a call telling him that the lounge manager's half-brother, Rashaan Price, had been killed in the shooting, he told Norwood to stop the car. The three men dispersed on foot.

{¶3} When police began investigating the shooting, they found the witnesses to be uncooperative and concerned for their safety. During an initial interview, police informed Norwood that he would face complicity charges if they learned that he had not provided them with an accurate description of the evening's events. Norwood then provided more detail to the statement he had already given, stating that he saw Taylor retrieve a gun from the car and that he saw Taylor fire shots into the lounge. Norwood was ultimately charged with three felonies, including complicity to commit felonious assault, but the State permitted him to plead guilty to a reduced charge in lieu of indictment and in exchange for his testimony against Taylor at trial.

{¶4} Taylor was indicted on one charge of murder in violation of R.C. 2903.02(B) and three charges of felonious assault in violation of R.C. 2903.11(A)(1)/(2), all accompanied by firearm specifications. He was also indicted for having a weapon under disability in violation of R.C. 2923.13(A)(3). After trial during which Norwood testified against him, a jury found Taylor guilty of all of the charges. The trial court merged the murder conviction with one count of felonious assault and sentenced Taylor to an indefinite prison term of 38 years to life. Taylor filed this appeal. His assignments of error are rearranged for ease of disposition.

II.

### ASSIGNMENT OF ERROR IV

[TAYLOR'S] CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION. THE TRIAL COURT ERRED BY DENYING [TAYLOR'S] CRIM.R. 29 MOTION.

{¶5} Taylor's first assignment of error argues that his convictions should be reversed because they are based on insufficient evidence that he is the person who fired shots into the

Embassy Lounge. Specifically, Taylor has argued that Norwood's credibility was suspect and, because he is the only person who identified Taylor as the shooter, that identification testimony is insufficient. We disagree.

{¶6} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, at ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. The identity of a perpetrator must be proved by the State beyond a reasonable doubt. *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12.

{¶7} In this case, multiple witnesses testified about the chain of events that led to the shooting at the Embassy Lounge, and their testimony agreed at most points. Taylor, Norwood, and Banks attended a birthday party for an individual named "Serg" where the trio consumed alcohol. They left the party early in the evening in a Porsche Cayenne owned by Banks' girlfriend with Norwood at the wheel and drove to the Embassy Lounge. When they attempted to enter, the bouncer said that Norwood and Taylor were banned from the establishment. Banks entered, found the lounge manager, Wesley Tucker, and asked that Norwood and Taylor be admitted. Tucker agreed that Norwood could enter, but denied entrance to Taylor, who had been banned from the lounge on a previous occasion for possessing a firearm and, more recently, had been forbidden to enter after police responded to a "scuffle" the previous weekend that involved

a large group of people. Taylor and Tucker argued about the previous incident at the lounge and Taylor's negative posting on social media. The argument ended when Tucker called Taylor "an Internet gangster," which "pissed [Taylor] off." According to Tucker, Taylor then walked away toward the car he had arrived in.

{¶8} At this point, Banks and Norwood agree in their testimony in some further respects. Both testified that they and Taylor walked to their vehicle, that Norwood and Banks got back into their respective seats, and that Taylor turned around and headed back toward the lounge. Norwood testified that he saw Taylor obtain a firearm from the backseat and approach the lounge, then saw him fire the weapon into the front of the building. Banks did not testify that he saw Taylor fire a gun, but both men testified that Taylor immediately returned to the vehicle and that they sped away from the scene. Both testified that they ultimately abandoned the vehicle when they were informed that Rashaan Price had died and then went their separate ways on foot.

{¶9} Taylor has argued that the evidence supporting his convictions is undermined by Norwood's lack of credibility, contradictions between the testimony of Norwood and Banks, and the circumstantial nature of the corroborating evidence. As with any other element, however, identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value. *State v. Gibson*, 9th Dist. Summit No. 23881, 2008-Ohio-410, ¶ 8. Further, when reviewing the sufficiency of the evidence, this Court does not weigh the credibility of witnesses. *Jenks*, 61 Ohio St.3d at 273. With this in mind, we conclude that a trier of fact could reasonably find that Taylor returned to the lounge entrance after retrieving a weapon from the vehicle and fired shots inside.

{¶10} Taylor's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY REGARDING THE CREDIBILITY OF THE ACCOMPLICE TESTIMONY OF RISHAWN NORWOOD.

{¶11} Taylor's first assignment of error is that the trial court committed plain error when it failed to instruct the jury that Norwood testified as an accomplice. Because Taylor did not object to the jury instructions at trial, we may only recognize error that affects a substantial right as necessary to prevent a manifest miscarriage of justice. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 15-16.

{¶12} When an alleged accomplice testifies against a defendant in a jury trial, the trial court must instruct the jury substantially as follows:

> The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
>
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

R.C. 2923.03(D). This Court has recognized that "[a]t minimum, an accomplice must be someone who has been indicted for the crime of complicity." *State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 22, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 131-132. Nonetheless, we have also acknowledged that under rare circumstances, other courts have concluded that the accomplice instruction is required when an unindicted witness's testimony implicates the same concerns. *Id.*, citing *State v. Sillett*, 12 Dist. Butler No. CA2000-10-205, 2002-Ohio-2596, ¶ 19. As the Court observed in *Sillett*:

> The purpose of the cautionary instruction requirement is to ensure that juries are informed that the testimony of an accomplice is inherently suspect because an accomplice is likely to have a motive to conceal the truth or otherwise falsely inculpate the defendant. * * * [T]here may be rare instances in which a person

who may be an accomplice is not indicted for a crime, but has motivation to lie or conceal the truth in return for their testimony. *For example, an accomplice may be offered immunity in exchange for testimony and never be indicted for the crime.* In such cases, there is reason for the witness'[s] testimony to be viewed with the same suspicion as that of an indicted accomplice.

(Emphasis added.) *Id*. at ¶ 19. In other words, when an unindicted person who may have been an accomplice testifies, "an accomplice instruction may be required if the witness received favorable treatment in return for the testimony." *Smith* at ¶ 20, citing *Sillett* at ¶ 20. "In determining whether the accomplice instruction is required in these circumstances, courts therefore consider whether the record reflects an agreement to testify and avoid indictment in addition to adequate opportunity for cross-examination and general instructions regarding witness credibility." *Smith* at ¶ 20, citing Sillett at ¶ 20 and *State v. Howard*, 5th Dist. Delaware No. 06CAA100075, 2007-Ohio-3669, ¶ 62.

{¶13} Although this Court must emphasize that it is only in rare circumstances that an unindicted witness's testimony will come within the purview of R.C. 2923.03(D), we conclude that this case presents us with precisely the fact pattern identified in *Sillett* and recognized by *Smith*. Norwood testified that he had been charged with complicity to commit felonious assault, obstructing justice, and possession of a firearm in a vehicle, but had not yet been indicted. The record demonstrates that Norwood testified in compliance with his agreement with the State that he would cooperate in the prosecution of Taylor and plead guilty to a misdemeanor and, in exchange, that the State would not indict him. Indeed, Norwood's initial interview with the police, which was admitted into evidence, indicates that from the earliest stages of the investigation, the State contemplated that he would be charged with complicity if he did not cooperate.

**{¶14}** Because this is the rare situation in which R.C. 2923.03(D) comes into play without an indictment for complicity, we must consider whether the trial court's failure to instruct the jury regarding Norwood's testimony was plain error. As such, our review is limited:

> By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. Third, the error must have affected * * * the outcome of the trial.

*State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). This court notices plain error only in exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶15}** "When considering whether failure to instruct a jury under R.C. 2923.03(D) amounts to plain error, this Court considers the scope of cross-examination of the accomplice; whether the accomplice's plea agreement was presented to the jury; whether the trial court substantially complied with R.C. 2923.03(D); and whether trial counsel may have made a tactical decision not to object in light of favorable testimony by the accomplice." *Smith* at ¶ 21, citing *State v. Simpson*, 9th Dist. Summit No. 25363, 2011-Ohio-2771, ¶ 19 and *State v. Davis*, 9th Dist. Summit No. 22395, 2005-Ohio-4083, ¶ 16. "The ultimate question is whether in the absence of the alleged error, the defendant would have obtained a different result at trial." *State v. Mack*, 9th Dist. Summit No. 26859, 2014-Ohio-1387, ¶ 5, citing *State v. Ross*, 9th Dist. Lorain No. 09CA009742, 2012-Ohio-536, ¶ 46, 48.

**{¶16}** We are not persuaded that in this case, compliance with R.C. 2923.03(D) would have resulted in a different outcome. Counsel for Taylor's cross-examination of Norwood firmly established that Norwood was testifying as part of a plea deal to avoid being indicted for complicity to commit murder. Norwood's plea agreement was admitted into evidence and

provided to the jury. Counsel for Taylor vigorously cross-examined Norwood with respect to the differences between his initial statement to the police and his later statement that identified Taylor as the shooter. Counsel also cross-examined Norwood about his decision to plead guilty to a misdemeanor and cooperate in Taylor's prosecution to avoid indictment for complicity to commit murder. In the same vein, Norwood's plea agreement was admitted into evidence and provided to the jury.

{¶17} The thoroughness of the record with respect to the details of Norwood's plea are testimony to counsel's diligence in this regard. The trial court provided a general instruction regarding witness credibility, but did not mention that Norwood's relationship to the events at hand meant that his testimony must be "subject to grave suspicion" and "weighed with great caution." *Id*. Nonetheless, the trial court's general instruction, coupled with counsel's thorough examinations of Norwood and Banks, clearly brought the credibility issues regarding Norwood's testimony to the forefront at trial. Although Norwood's testimony was entirely unfavorable to Taylor and it is unlikely that counsel made a tactical decision not to request an accomplice instruction, Norwood himself acknowledged his strong motivation to cooperate fully in Taylor's prosecution. It is true that Norwood alone testified that he saw the shooting and that he alone identified Taylor as the shooter, but the State also presented significant circumstantial evidence that implicated Taylor in the shooting, including Mr. Taylor's altercation with Mr. Tucker that occurred immediately prior to the shooting and the fact that Taylor fled to Georgia after the shooting and lived under an assumed name.

{¶18} Consequently, although it was error for the trial court to omit an accomplice instruction, under the circumstances of this case, we cannot conclude that doing so rose to the level of plain error because we are not persuaded that had the trial court given the instruction, a

different outcome would have resulted. *See generally Barnes*, 94 Ohio St.3d at 27. Taylor's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING THE PRESENTATION OF INCOMPLETE VIDEO EVIDENCE WHEN POTENTIALLY EXCULPATORY VIDEO EVIDENCE HAD BEEN DESTROYED OR MADE UNAVAILABLE BY THE PARTY WITH CONTROL OF THE VIDEO EVIDENCE.

{¶19} Taylor's third assignment of error is that the trial court committed plain error by allowing the State to play security video from the exterior of the lounge at trial. Specifically, Taylor maintains that because the video feed from the security camera that should have captured the shooting was unavailable due to spoliation of evidence, none of the video should have been admitted.

{¶20} During trial, Guy Sheffield of the Akron Police Department testified that the from July 20, 2013, through July 23, 2013, the security camera at issue was physically positioned so that it only recorded a static image of the anchor that secured it to the wall. Other than to observe that the camera position would have had to be changed by the system operator rather than from outside the lounge, Officer Sheffield did not offer any testimony regarding how or why the camera was inoperable. Taylor's argument that the evidence was intentionally "destroyed or made unavailable" cannot be derived from the testimony that is in the record on appeal. Accordingly, this argument is not properly considered in the context of a direct appeal. *State v. Madrigal*, 87 Ohio St.3d 378, 391 (2000). Taylor's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

APPELLANT WAS RENDERED INEFFECTIVE ASSISTANCE BY DEFENSE COUNSEL AT TRIAL.

{¶21} Taylor's third assignment of error is that by failing to request an accomplice instruction, trial counsel provided ineffective assistance. We disagree.

{¶22} In order to demonstrate ineffective assistance of counsel, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. "Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *State v. Cromartie*, 9th Dist. Medina No. 06CA0107-M, 2008-Ohio-273, ¶ 25, citing *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 27.

{¶23} In light of our resolution of Taylor's first assignment of error, we conclude that even if counsel's performance was defective in this respect, there is not a reasonable probability that the outcome of the trial would have been different. Taylor's third assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY REFUSING TO MERGE ALL THREE
COUNTS OF FELONIOUS ASSAULT WITH THE COUNT OF MURDER.

{¶24} Taylor's fifth assignment of error is that the trial court erred by failing to merge his murder conviction with respect to Rashaan Price with his convictions for felonious assault with respect to two other victims of the shooting who survived. We disagree.

**{¶25}** Under R.C. 2941.25:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Before sentencing a defendant, a trial court must determine whether multiple offenses were committed by the same conduct. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 47. "If the multiple offenses *can* be committed by the same conduct, then the court must determine whether the offenses *were* committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" (Emphasis added.) *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in judgment only). With respect to multiple victims, this Court has concluded:

"Multiple convictions are proper when a single act is committed against multiple victims and that act constitutes an offense which is defined in terms of conduct toward another." *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 30, citing *State v. Jones*, 18 Ohio St.3d 116, 117-118 (1985). In such a case, the act constitutes two offenses of dissimilar import. *Id*., citing *Jones* at 118. "[W]here a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each victim such that the offenses are not allied, and the defendant can properly be convicted of and sentenced on multiple counts." *Id*., quoting *State v. Chaney*, 8th Dist. Cuyahoga No. 97872, 2012-Ohio-4934, ¶ 26.

*State v. Fields*, 9th Dist. Lorain No. 13CA010453, 2014-Ohio-5386, ¶ 44. *See also State v. Jennings*, 6th Dist. Lucas No. L-13-1178, 2015-Ohio-134, ¶ 37. In this case, the trial court did not err by declining to merge Taylor's conviction for the murder of Rashaan Price with the convictions for felonious assault with respect to the two victims who survived the shooting.

**{¶26}** Taylor's fifth assignment of error is overruled.

III.

**{¶27}** Taylor's assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS.

BELFANCE, P. J.
CONCURRING.

{¶28} I concur. With respect to Mr. Taylor's first assignment of error, I agree that, based upon the detail contained in the record in this case, compliance with R.C. 2923.03(D) would not have resulted in a different outcome. In particular, in considering Mr. Norwood's testimony and weighing his credibility, the jury heard that Mr. Norwood had initially denied witnessing the shooting, only to recant when the police told him that he would be charged as an accomplice. In addition, Mr. Norwood testified that he had moved to Virginia and had refused to return to testify, only relenting after he was charged as an accomplice to Taylor. Finally, Mr. Norwood admitted on cross-examination that, before telling the police that Taylor was the shooter, he had asked, "Well, will this statement let me walk out of here?" Accordingly, while the trial court committed error, I agree that such did not rise to a level of plain error.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.