[Cite as *State v. Hill*, 2019-Ohio-698.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 107058**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**GAIL HILL**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-622568-A

**BEFORE:** Blackmon, J., E.T. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** February 28, 2019

**ATTORNEY FOR APPELLANT**

James J. Hofelich
614 West Superior Avenue, Suite 1310
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Caitlin E. Monter
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Gail Hill ("Hill") appeals from his convictions for theft and criminal damaging.   He

assigns the following errors for our review:

> I.   The trial court erred when it denied [Hill's] motion for acquittal under Crim.R. 29 because the [theft charges are not] supported by sufficient evidence.
>
> II.   [Hill's] convictions are against the manifest weight of the evidence.
>
> III.   The trial court's sentence of four years is contrary to law.
>
> IV.   [Hill's theft] convictions are allied offenses of similar import and should
>
> merge for purposes of sentencing.

{¶2}   Having reviewed the record and pertinent law, we affirm the decision of the trial

court. The apposite facts follow.

{¶3}   In November 2017, Hill was indicted on two counts of fourth-degree felony theft

(1983 Buick automobile and prescription medicine belonging to Rodney Bragg ("Rodney")), one

count of fifth-degree felony theft (money), and one count of misdemeanor criminal damaging.

Hill pled not guilty, and the matter proceeded to a jury trial on March 19, 2018. At the start of the trial, Hill stipulated that he is the owner of a cell phone that police recovered from Rodney's vehicle.

{¶4} The state's evidence indicated that Rodney helps manage Neil's Dynagard, an automobile service station in Cleveland. His responsibilities include collecting the cash receipts and depositing them at the bank. However, if he is unable to go to the bank before it closes, he locks the receipts in the trunk of his car, then takes them home and deposits them the following morning.

{¶5} Rodney testified that he and his wife, Sharon ("Sharon"), had been friends with Hill. Prior to the thefts, Hill arrived at the service station and "he just started popping up. He popped up one day and been coming here all week." Rodney testified that he kept the same banking routine while Hill was at the service station, and Hill "was just watching."

{¶6} Rodney testified that on August 8, 2017, Hill was at the service station for most of the day and left at about 4:30 p.m. Also on that day, Rodney called his wife, Sharon, and asked her to bring his prescription pain medication, Percocet, to him. Sharon brought Rodney the medication. After taking a Percocet tablet, Rodney locked the prescription in the glove box of his 1983 Buick automobile that was parked in the lot. That evening, Rodney collected the cash receipts, approximately $1,600, and locked them in the trunk of his car. He arrived home at around 8:00 p.m. and parked his car in the garage. However, he forgot to bring the money inside.

{¶7} At approximately 10:30 p.m., Sharon observed Rodney's 1983 Buick automobile being driven out of her driveway while Rodney was inside sleeping. Sharon awoke him and told him someone was stealing the car, then got into her own car to follow after the Buick. Sharon spotted the car on West 25th Street near Interstate 90. A second car was following it.

Sharon followed the cars as they sped toward MetroHealth Medical Center, and the second car drove away. A police officer began to follow Sharon. The driver of the 1983 Buick abandoned the car near West 32nd Street and ran off. Sharon maintained that she got a good look at the driver, and she stated that he was bald, and was wearing a dark shirt, dark shorts with yellow trim, white socks, and white tennis shoes.

{¶8} In court, Sharon identified Hill as the person she saw running from her husband's car. She admitted that during the chase and immediately afterward, she stated that the assailant was the garage owner's stepson, David. However, she stated that David resembled Hill, and that both men were bald, and both had been to her home before and were able to get past her dogs.

{¶9} Rodney arrived on the scene and, based upon Sharon's description of the assailant and his clothing, told police that it "was Gail Hill [and that] he's been up at the gas station for a week now, you know, sitting around watching." Rodney acknowledged that Hill is a mechanic, but he denied that Hill works at the service station. Rodney also denied giving Hill permission to use his car or work on his car.

{¶10} Rodney provided the police with Hill's father's address, approximately a block away from where the car was abandoned. Police recovered a cell phone and a screwdriver from the car, neither of which belonged to the Braggs. The steering column of the car was peeled, and the locks to the passenger-side door, trunk, and glove box were broken. The cash receipts from the service station were missing from the trunk, and Rodney's medication was missing from the glove box. The investigating officers determined that the cell phone found in the car belonged to Hill, but they did not process the car for fingerprints and did not pursue whether David had any involvement in the matter.

**{¶11}** The trial court denied Hill's motion for acquittal, and the defense rested without presenting witnesses. The jury subsequently convicted Hill of all charges. The court sentenced him to two consecutive 18-month terms for the fourth-degree felony theft charges, a consecutive 12-month term for the fifth-degree felony theft, and a concurrent 90-day term for criminal damaging. The court also ordered Hill to pay $1,600 for restitution.

## Sufficiency of the Evidence

**{¶12}** In the first assigned error, Hill argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal on the felony theft charges. He asserts that there is insufficient evidence to support the charge of theft of the vehicle because Sharon identified a different individual, David, as the person who stole the 1983 Buick. Hill also argues that there is insufficient evidence of theft of the money because the state alleged that this money was stolen from the Braggs, but the state's evidence demonstrated that the money in fact belonged to Neil's Dynagard gas station. Hill asserts that the conviction for theft of the Percocet is insufficient because the state failed to demonstrate that the medication is a "dangerous drug," within the meaning of R.C. 4729.01, so it could not establish that Hill committed a fourth-degree felony offense.

**{¶13}** Crim.R. 29(A), which governs motions for acquittal, states:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

**{¶14}** "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.

**{¶15}** The elements of theft are set forth in R.C. 2913.02(A)(1) as follows:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner *or person authorized to give consent*; * * *

(B)(2) If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree. * * *

(5) If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree.

(6) If the property stolen is any dangerous drug, a violation of this section is theft of drugs, a felony of the fourth degree[.]

(Emphasis added.)

{¶16} In determining whether the state presented sufficient evidence establishing Hill as the suspect, we note that the identity may be established by the use of direct or circumstantial evidence. *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19; *State v. Taylor*, 9th Dist. Summit No. 27273, 2015-Ohio-403, ¶ 9; *State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082.

{¶17} In this matter, when Rodney heard Sharon's description that the suspect was bald and wearing a dark shirt and dark shorts trimmed with yellow, he told police that earlier that day Hill, who was at the service shop, matched Sharon's description. Bragg told police that Hill watched him processing the cash receipts, but did not work there and did not have permission to use his car. Hill stipulated that he was the owner of the cell phone recovered from the car. From the foregoing, reasonable minds could reach different conclusions as to whether Hill was the suspect, and the state presented sufficient evidence.

{¶18} As to the fact that Rodney was not the owner of the money, the evidence demonstrated that Rodney managed the service station and handled the bank deposits. He had

possession and control over the funds so he qualifies as a "person authorized to give consent" relative to the cash deposits within the meaning of R.C. 2913.02(A)(1). *See* R.C. 2913.01(D).

{¶19} As to the claim that there is insufficient evidence that Hill stole a "dangerous drug" within the meaning of R.C. 2913.02(B)(6), we note that this objection was not specifically raised below. Accordingly, we review only for plain error. Crim.R. 52(B).

{¶20} A "dangerous drug" is one that may be dispensed only upon prescription. R.C. 4729.01 and 3719.01. "Percocet, which contains oxycodone, is a Schedule II controlled substance." *State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 15 (9th Dist.); R.C. 3719.01(C). Under R.C. 3719.05(A), prescriptions are required for dispensing controlled substances. Accordingly, we find no plain error affecting Hill's substantial rights with regard to his conviction for theft of a "dangerous drug."

{¶21} In accordance with all of the foregoing, the first assigned error lacks merit.

## Manifest Weight

{¶22} In the second assigned error, Hill argues that his convictions are against the manifest weight of the evidence because no investigation of David was conducted, and there was no forensic testing of his phone to determine whether someone else placed it in Rodney's car.

{¶23} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversing a conviction as being against the manifest weight of the

evidence and ordering a new trial is reserved for only those "exceptional cases in which the evidence weighs heavily against the conviction." *Id.*

{¶24} We cannot conclude that this case is one of the "exceptional cases in which the evidence weighs heavily against the conviction." Sharon testified that although she believed that the suspect was David, she observed that the man in the car was bald and wearing a dark shirt and dark shorts with yellow trim. Rodney testified that this description fit Hill, who had been at the service station all week and was there earlier the day of the thefts, watching what Rodney was doing. Hill's cell phone was also recovered from the car. The manifest weight of the evidence supports the convictions. *Accord State v. Torres*, 8th Dist. Cuyahoga No. 99596, 2013-Ohio-5030,¶ 95 (convictions were not against the manifest weight of the evidence, despite the absence of forensic evidence tying defendant to victim, where "substantial testimonial and circumstantial evidence" supported jury's verdict).

{¶25} The second assigned error lacks merit.

### Sentencing

{¶26} In the third assigned error, Hill argues that imposition of maximum and consecutive sentences is unlawful because no one was injured, and the 1983 Buick was recovered with "minimal damage."

{¶27} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either (1) the record does not support certain specified findings, or (2) the sentence imposed is contrary to law. An appellate court does not review a trial court's sentence for an abuse of discretion. *Marcum* at ¶ 10. Rather, an appellate court may vacate or modify

any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence. *Id*. at ¶ 23.

{¶28} In reviewing the challenge to maximum terms, we note that a sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

{¶29} Pursuant to R.C. 2929.11(A), in effect at the time, the overriding purposes of felony sentencing include "protect[ing] the public from future crime by the offender and others," and "punish[ing] the offender using the minimum sanctions that the court determines accomplish those purposes * * *." Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶30} Pursuant to R.C. 2929.12, "the court shall consider the factors set forth in [R.C. 2929.12] relating to the seriousness of the conduct [and] the factors provided in relating to the likelihood of the offender's recidivism * * *." R.C. 2929.12. However, "the court is not required to use particular language or make specific findings on the record regarding its consideration of those factors." *State v. Carter*, 8th Dist. Cuyahoga No. 103279, 2016-Ohio-2725, ¶ 15.

{¶31} In this matter, the trial court sentenced Hill to 12 months for his fifth-degree felony theft conviction, which is within the permissible range for this offense but is the maximum term. *See* R.C. 2929.14. The court also sentenced Hill to 18 months for his fourth-degree felony

theft convictions which is within the permissible range for these offenses, but is the maximum term. *See* R.C. 2929.14. In imposing these sentences, the court stated that it considered the purposes and principles of sentencing as required under R.C. 2929.11. The court also stated that it considered the seriousness and recidivism factors as required under R.C. 2929.12. Additionally, the court noted, and the record reflects, that Hill has a lengthy criminal record. The journal entry likewise reflects that the court considered both R.C. 2929.11 and 2929.12. Therefore, these maximum terms are not clearly and convincingly contrary to law.

{¶32} In reviewing the challenge to consecutive terms, we note that before a trial court may impose consecutive sentences, the court must first make specific findings mandated by R.C. 2929.14(C)(4) and incorporate those findings in the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Under R.C. 2929.14(C)(4), the court must find that consecutive sentences are: (1) necessary to protect the public from future crime or to punish the offender; and (2) are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. R.C. 2929.14(C)(4). In addition to making those findings, the court must also find one of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶33} At the sentencing hearing in this matter, the trial court stated as follows:

Four years with your criminal history and stealing these items is not disproportionate to the crime here.

Four years is clearly necessary mainly to protect the public from your proclivity to steal items.

Four years is also necessary to impose an appropriate form of punishment for a relatively minor type of crime on a man, though, who has 13 prior felonies in Cuyahoga County alone and has at least one felony in another county. Your criminal history shows consecutive terms are needed to protect the public.

(Tr. 379.)

**{¶34}** After reviewing this matter, we conclude that the trial court did not err in imposing consecutive sentences. The record reflects that the trial court engaged in the correct analysis required under R.C. 2929.14(C)(4) and made the appropriate consecutive sentence findings. We cannot clearly and convincingly find that the record fails to support the trial court's findings, and they were properly incorporated into the sentencing journal entries as required under *Bonnell*.

**{¶35}** The third assigned error lacks merit.

## Allied Offenses

**{¶36}** Hill argues that his theft offenses are allied offenses of similar import because all relate to the theft of a motor vehicle, and the vehicle contained the missing money and prescription medication. In opposition, the state argues that Hill was properly convicted of separate offenses because he broke into three separate locations of the vehicle in order to take the money from the trunk, remove the drugs from the glove box, and then steal the car itself.

**{¶37}** Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, * * * the defendant may be convicted of only one."

**{¶38}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 30-31, the Ohio Supreme Court detailed the allied offenses analysis:

[T]he analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

**{¶39}** This court recently explained in *State v. A.M.*, 8th Dist. Cuyahoga No. 106400, 2018-Ohio-4209,

"[T]he issue of whether two offenses are allied depends not only on whether the two crimes were committed in the same act, but also with a single state of mind. The Ohio Supreme Court has defined the term 'animus' to mean 'purpose or, more properly, immediate motive.' *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). Because animus is often difficult to prove directly, it may be inferred from the surrounding circumstances. When 'an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime.' *Id*.

Thus, when determining whether two offenses were committed with a separate animus, the court must consider (1) whether the first offense was merely incidental to the second offense or whether the defendant's conduct in the first offense demonstrated a significance independent of the second, and (2) whether the defendant's conduct in the first offense subjected the victim to a substantial increase in the risk of harm apart from that involved in the second offense. *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 17."

*Id.* at ¶ 68, quoting *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, ¶ 34-35.

**{¶40}** In this matter, the trial court stated:

You got into their 1983 Buick Park Avenue. You jimmied the lock in the trunk, broke into the trunk, and stole 1,600-some dollars. You jimmied the lock in the

glove compartment, and stole prescription pills. You peeled the column of the Buick, and you stole the car. Those are three separate acts of theft. Three separate acts of animus. I do not find those counts merge.

(Tr. 378.)

**{¶41}** We agree with this analysis and conclude that the theft offenses were of dissimilar import which were not merely incidental to one another. Hill engaged in three separate actions, directed at three separate areas of the car. He peeled the steering column to steal the car, broke the trunk lock to steal the money, and broke the glove box lock to steal the prescription medication. His actions revealed a separate animus or motivation for each act, resulting in separate and identifiable harms.

**{¶42}** The fourth assigned error lacks merit.

**{¶43}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY
KEY WORDS: