[Cite as *State v. Richards*, 2022-Ohio-4698.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210656 |
| | | TRIAL NO. C-21CRB-18635-A |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| CHRISTOPHER RICHARDS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 28, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Plaintiff-appellant Christopher Richards appeals the judgment of the Hamilton County Municipal Court convicting him of child endangerment. In one assignment of error, Richards contends that his conviction is based on insufficient evidence and is against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

### *Facts and Procedure*

{¶2} In October 2021, Richards was charged with two counts of endangering children under R.C. 2919.22(A), a first-degree misdemeanor. In the case numbered C-21CRB-18635-A, Richards was charged with endangering his three-year-old son, P.R. In the case numbered C-21CRB-18635-B, Richards was charged with endangering his five-year-old son, C.R. Both complaints alleged that "[s]ubject overdosed on [a] controlled substance and [was] unable to care for children."

{¶3} Denise Hall, Richards's neighbor, testified that she found Richards's wife, Dawn, unresponsive on the communal laundry room floor, with one of their children. Hall testified that she thought Dawn was having a seizure. After finding Dawn, Hall went to the Richards's apartment and knocked on the door. Hall testified that one of their young sons, whom she referred to as "the baby," answered the door. Hall testified that he was crying and said, "Daddy was sleeping." Hall discovered Richards unresponsive in his bedroom laying "between the bed and the wall." She tried to wake Richards "for a second or two," before calling the police.

{¶4} Reading Police Officer Teeple arrived, and first went to the laundry room where he was told by another officer to check on Richards in the apartment. Teeple testified that he went to Richards's bedroom and found him "on the side of the

bed, between the bed and the wall." For about 20 seconds, Teeple "attempted to shake him to wake him up," but Richards did not respond. Teeple testified that once paramedics arrived, they administered Narcan, and "g[o]t a little bit of a response" but "[h]e still wasn't alert." Eventually, Richards became so agitated that they had to restrain him on the bed and administer a sedative. He was transported to the hospital.

{¶5} Teeple, who had been trained on how to use Narcan, testified that Narcan is used when someone has overdosed on opiates and usually provides "an immediate response and alertness from the patient." He testified that Narcan does not work on alcohol or other drugs.

{¶6} A bench trial was held in December 2021. After the close of the evidence, the court sought to clarify which charge involved the child in the apartment with Richards at the time police arrived:

> **THE COURT**: So, one child was with each parent. One child was in the
>
> apartment. The other child was in the laundry room?
>
> * * *
>
> **THE COURT**: Will that be your position?
>
> **PROSECUTOR**: That's what I believe the testimony was.
>
> **THE COURT**: And so which count involves which child?
>
> **PROSECUTOR**: Judge, I don't think they differentiate the children
>
> between the two complaints.[1]
>
> **THE COURT**: Then I would ask you to elect.

---

[1] It is unclear why the prosecutor said this because each complaint does specifically reference a child. The complaint in the case numbered C-21CRB-18635-A named three-year-old P.R. The complaint in case numbered C-21CRB-18635-B named five-year-old C.R.

3

**PROSECUTOR**: I would say the A charge is for the five-year-old. The B charge is for the three-year-old for the one was –

**THE COURT**: I still don't know which one was which.

**PROSECUTOR**: The one who was in the room was A. The A child was in the room.

**THE COURT**: How old was that child?

**PROSECUTOR**: Five.

**THE COURT**: And the other one is downstairs?

**PROSECUTOR**: Correct.

**THE COURT**: Do you agree with that?

**DEFENSE**: I don't.

**THE COURT**: And in what way don't you agree?

**DEFENSE**: Judge, I believe there was only testimony that a child answered the door crying. That's what I heard. So, I don't—all of this about the other—about the mother and what she was doing, I don't know. I don't agree with that. I don't think the state has made it clear, Judge.

**THE COURT**: As I understand it, the child, from the testimony of Ms. Hall, the child [C.R.] is either four or five years old was the one who opened the door. And you are electing that will be the A?

**PROSECUTOR**: That's correct.

{¶7} The court subsequently found Richards guilty in the case numbered C-21CRB-18635-A (which named three-year-old P.R. in the complaint); but not guilty

in the case numbered C-21CRB-18635-B (which named five-year-old C.R. in the complaint).

**{¶8}** In rendering its verdict, the court stated that it could not find, "based on the evidence that he was under the influence of any illicit drugs because there was no testimony that drugs or paraphernalia was found in the house." However, the court noted that Richards was found "unresponsive not in a bed, but between the wall and the bed, which would indicate the state he was in." The court stated that it was also taking into consideration that Richards did not wake up until he was administered Narcan, which revives a person if they are under the influence of an opiate. The court stated, "I can't say for sure whether he was under the influence of an opiate, but I can say it took quite a lot of effort to bring him to a conscious state." The court held that "[b]ased upon the effort that it took to bring Mr. Richards to a conscious state, and the fact that this child was in a distressed state, the finding is guilty as to the A charge."

**{¶9}** Richards was sentenced to 180 days in jail with 180 days suspended. He was placed on community control for one year with drug treatment screens and a requirement to cooperate with the Hamilton County Department of Job and Family Services. Richards timely appealed.

### *Law and Analysis*

**{¶10}** In a single assignment of error, Richards contends that his conviction is based on insufficient evidence and against the manifest weight of the evidence. Under sufficiency, he argues that the evidence does not support that C.R. was in the apartment with him. Under manifest weight, Richards argues that the court lost its way in inferring from the evidence adduced at trial that his being unconscious was the result of a reckless action.

5

{¶11} The state contends that "[b]y putting himself in a situation where he was rendered unconscious until administered Narcan—a reckless action—Richards did not ensure his duty of care and protection, and he created a substantial risk that his son would be in harm's way."

{¶12} When this court reviews a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "It falls to the trier of fact to ' "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." ' " *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16, quoting *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 24, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Essentially, our role is to ask "whether the evidence against a defendant, *if believed,* supports the conviction." (Emphasis sic.) *Jones* at ¶ 16.

{¶13} When we review a challenge to the manifest weight of the evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins,* 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). While a manifest-weight challenge asks this court to " 'determine which of the competing inferences is more believable,' " we are not to " 'substitute [our] judgment for that of the trier of fact on the issue of credibility of the witnesses unless

it is patently apparent that the factfinder lost its way.' " *State v. Williams*, 10th Dist. Franklin No. 10AP-779, 2011-Ohio-4760, ¶ 21, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81 (2d Dist.). The court should only reverse the conviction and grant a new trial in "exceptional case[s] in which the evidence weighs heavily against the conviction.*" State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶14} R.C. 2919.22(A) provides, "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The necessary mental state for a conviction under this statute is recklessness. *State v. Bush,* 2020-Ohio-772, 152 N.E.3d 892, ¶ 7 (1st Dist.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). A substantial risk "means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶15} Child-endangerment cases are typically fact-specific. *See Bush* at ¶ 8, citing *Beachwood v. Hill*, 8th Dist. Cuyahoga No. 93577, 2010-Ohio-3313, ¶ 21 (holding that the fact-specific nature of child-endangerment cases was "all the more reason to find that the [prosecution] presented sufficient evidence."); *State v. Hughes*, 3d Dist. Shelby No. 17-09-02, 2009-Ohio-4115, ¶ 34. The child's age, amount of time left unsupervised, notice of the risk, and any measures taken by the parent to mitigate the risk are all considered when determining if a parent acted recklessly. *Bush* at ¶ 8 (collecting cases).

7

{¶16} Richards's sufficiency-of-the-evidence argument focuses on the identity of the child whom Richards was found guilty of endangering. He argues that the state elected the older child, C.R., as the child in the "A charge," but Hall's testimony that "the baby" answered the door demonstrates that his younger child, P.R., was the one in the apartment. We again note, contrary to the state's representation at trial, each complaint does specifically reference a child, and P.R. was named in the complaint for the "A charge."

{¶17} However, a sufficiency-of-the-evidence review directs this court to review the evidence as it relates to *the essential elements* of the offense, and the identity of a defendant's child is not an element of endangering children under R.C. 2919.22(A). *See State v. Batton*, 9th Dist. Lorain No. 96CA006505, 1997 Ohio App. LEXIS 4259, 11-12 (Sep. 17, 1997) (holding that a conviction for child endangerment was based on sufficient evidence where the indictment named three children but the evidence at trial focused on only two because "the name of the victim is not an element of the crime."); *see also State v. Randolph*, 2022-Ohio-2909, 194 N.E.3d 476, ¶ 16 (6th Dist.) ("Since written notice is not an element of criminal trespass, it is unnecessary for us to undertake an analysis of the sufficiency of the evidence * * * as to appellant's assertion that he was never served with written notice.").

{¶18} Moreover, Richards does not contend that he has been prejudiced by this inconsistency. Richards admits that he was with one of his children in his apartment. The testimony at trial established that his children were ages three and five. Thus, we find that there was sufficient evidence that Richards endangered a child under 18.

8

{¶19} Richards's primary argument is one of manifest weight. Specifically, he argues that the trial court's findings were not supported by the evidence. Richards argues that the trial court's inference that he was under the influence of an opiate was against the manifest weight of the evidence. He challenges the court's findings that he was not lying on the bed, but between the wall and the bed, that two people could not wake him, and that Narcan was effective to wake him.

{¶20} While the trial court acknowledged that there was no testimony that any drugs or drug paraphernalia was found in the house, it seemed to have inferred that Richards had overdosed on some sort of opiate. Hall and Teeple testified that Richards could not be woken up by traditional methods and that his positioning between the wall and the bed was a cause for concern. Teeple testified that Narcan revives people who have overdosed on opiates and Narcan was the first thing to generate even "a little bit of a response" from Richards. In rendering its verdict, the court noted that Richards's position between the wall and the bed and the efforts it took to wake him up "indicated the state that he was in." Thus, the court found that Richards was in such a condition that rendered him incapacitated and thereby recklessly created a substantial risk to the safety of his young son by violating a duty of care. We hold that the trial court did not clearly lose its way in making these inferences. The sole assignment of error is overruled.

{¶21} For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P. J.,** and **WINKLER, J.,** concur.

9

Please note:

The court has recorded its entry on the date of the release of this opinion.

